**№ 26-2090**

---

**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

---

**MATTHEW AUGUST LeFANDE**

*Appellant*

v.

**UNITED STATES OF AMERICA**
**BUREAU OF ALCOHOL, TOBACCO, FIREARMS**
**AND EXPLOSIVES**

*Appellee*

---

**APPELLANT'S OPENING BRIEF**

---

Matthew August LeFande
Box 22
Midland VA 22728
(540) 346-3760
email: matthew.lefande@cpi-va.us
Plaintiff/Appellant *pro se*

**Certificate as to Parties, Rulings, and Related Cases.**

**PARTIES**

Matthew August LeFande is a United States Citizen and resident of the Commonwealth of Virginia.

The Bureau of Alcohol, Tobacco, Firearms and Explosives is an executive agency of the United States government subject to the Privacy Act of 1974, 5 U.S.C. § 552a.

LeFande's company, non-party Commonwealth Protection Institute, is an Internal Revenue Code section 501(c)(3) non-stock corporation conducted not for profit. There are no shareholders or owners and is not publicly traded.

**RULINGS UNDER REVIEW**

The Appellant appeals the United States District Court for the Eastern District of Virginia's March 20, 2026 summary dismissal of *LeFande v. ATF*, 1:24-CV-2311 (RDA-LRV), ECF # 23, and the July 29, 2026 denial of his Motion for Reconsideration and Motion for a Preliminary Injunction, ECF # 30.

## RELATED CASES

*LeFande v. Blocker*, 1:26-cv-1271 (RDA) (E.D. Va. 2026).

*LeFande v. Blocker*, 1:25-cv-54 (RDA/WEF) (E.D. Va. 2026).

**TABLE OF CONTENTS**

I. Table of Authorities ... vi

II. Jurisdictional Statement ... 1

III. Statement of Issues ... 2

IV. Statement of the Case ... 3

1. Introduction ... 3

2. Statement of Facts ... 5

V. Summary of the Argument ... 16

VI. Argument ... 19

1. Standard of Review ... 19

2. LeFande prevails on the merits of his Privacy Act claims ... 19

a. LeFande has already identified the specific ATF record which is incorrect and adverse to him, and therefore, perfected his Privacy Act claims ... 19

b. Blocker's correspondence with the ATF is demonstrably fraudulent ... 23

c. The District Court could not simply ignore LeFande's authorities brought to the Court's attention in the form of a Rule 59(e) motion. .25

d. The District Court's statement that LeFande is not the "Responsible Person" for his corporation is an impermissible factual conclusion in the context of a Rule 12(b)(6) motion ... 27

e. None of LeFande's claims are moot ... 28

3. Absent the court's immediate intervention, LeFande faces a very real threat of irreparable harm in the form of a bad faith prosecution and ongoing interference with his trade and profession............................34

4. The Balance of Equities and Public Policy dictate an injunction.......37

VII. Conclusion ........................................................................................39

Request for Oral Argument

Certificate of Compliance with Type-Volume Limit

Certificate of Service

# I. Table of Authorities

## Cases

*ACLU of Mass. v. U.S. Conference of Catholic Bishops,*
705 F.3d 44 (1st Cir. 2013)....................................................30-31

*Already, LLC v. Nike, Inc.,*
133 S.Ct. 721 (2013)..............................................................30-31

*Amazon.com, Inc. v. WDC Holdings LLC*,
20-1743 (4th Cir. 2021)..............................................................29

*Arizonans for Official English v. Arizona,*
520 U.S. 43 (1997)....................................................................30

*Armstrong v. Exceptional Child Center, Inc.,*
575 U.S. 320 (2015)..............................................................17-18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................26

*Babbitt v. Farm Workers*,
442 U.S. 289 (1979)..................................................................17

*Backpage.com, LLC v. Dart,*
807 F.3d 229 (7th Cir 2015)........................................................39

*Bell Atl. Corp.v. Twombly*,
550 U.S. 544 (2007)..................................................................26

*Bell v. Burson,*
402 U.S. 535 (1971)..................................................................35

*Board of Regents v. Roth,*
408 U.S. 564 (1972)..............................................................36-37

*Chesapeake Bay Foundation, Inc. v. Department of Agriculture*,
11 F.3d 211 (D.C. Cir. 1993)......................................................33

*City News & Novelty, Inc. v. City of Waukesha*,
531 U.S. 278 (2001)........................................................................30

*City of Mesquite v. Aladdin's Castle, Inc.*,
455 U.S. 283 (1982)........................................................................30

*Collison v. International Chemical Workers Union*,
34 F.3d 233 (4th Cir. 1994)..............................................................27

*Dataphase Sys., Inc., v. C L Sys., Inc.*,
640 F.2d 109 (8th Cir. 1981)......................................................37-38

*District of Columbia v. Heller*,
554 U.S. 570 (2008)...................................................................35-36

*Doe v. Office of the Director of National Intelligence*,
25-1527 (4th Cir. 2026).....................................................................21

*Doe v. United States*,
821 F.2d 694 (D.C. Cir. 1987)...................................................20-21

*E.I. du Pont de Nemours & Co. v. Kolon Industries, Inc.*,
637 F.3d 435 (4th Cir. 2011).............................................................18

*Francis v. Giacomelli*,
588 F.3d 186 (4th Cir. 2009).............................................................26

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000)........................................................................31

*Goldberg v. Kelly*,
397 U.S. 254 (1970)........................................................................34

*Gowan v. U.S. Department of the Air Force*,
148 F.3d 1182 (10th Cir. 1998)..................................................32-33

*Greidinger v. Davis*,
782 F. Supp. 1106 (E.D. Va. 1992)............................................28, 32

* *Guzman v. Acuarius Night Club LLC*,
24-1555 (4th Cir. 2026)....................................................................16, 26

*Hall v. DIRECTV, LLC*,
846 F.3d 757 (4th Cir. 2017)....................................................................18

*Hengle v. Treppa*,
19 F.4th 324 (4th Cir. 2021)....................................................................29

*Hill v. Braxton,*
277 F.3d 701 (4th Cir. 2002)....................................................................27

*Holder v. Humanitarian Law Project,*
561 U.S. 1 (2010)....................................................................17

*Kaplan v. Block*,
183 Va. 327 (1944)....................................................................24

*Knox v. Serv. Emps. Int'l Union, Local 1000,*
567 U.S. 298 (2012)....................................................................31

*LeFande v. ATF*,
1:24-cv-2311 (E.D. Va. 2026)....................................................................22

*LeFande v. Blocker,*
1:25-cv-54 (E.D. Va. 2025)....................................................................29, 39

*LeFande v. Blocker,*
1:26-cv-1271 (E.D. Va. 2026)....................................................................9

*Manson v. Curtis,*
223 N.Y. 313 (1918)....................................................................24

*Maynard v. C.I.A.*,
986 F.2d 547 (1st Cir. 1993)....................................................................33

* *McCready v. Nicholson*,
465 F.3d 1 (D.C. Cir. 2006)....................................................................16, 20-22

* Cases principally relied upon.

*Meyer v. Nebraska*,
262 U.S. 390 (1923)....................................................................36

* *Ord v. D.C.*,
587 F.3d 1136 (D.C. Cir. 2009)..................................................16, 17

*Parker v. District of Columbia*,
478 F.3d 370 (D.C. Cir. 2007)........................................................35

*Paul v. Davis,*
424 U.S. 693 (1976)....................................................................36

*Perez v. Ledesma*,
401 U.S. 82 (1971)......................................................................35

*Peters v. U.S. Parole Commission*,
85 F.3d 655 (D.C. Cir. 1996)..........................................................20

*Polk v. Montgomery County Public Schools*,
25-1136 (4th Cir. 2026)..................................................................2

* *Porter v. Clarke*,
852 F.3d 358 (4th Cir. 2017).......................................................29-31

*Powell v. McCormack,*
395 U.S. 486 (1969)....................................................................30

*Reinbold v. Evers,*
187 F.3d 348 (4th Cir. 1999)...............................................19, 31-33

*Ridpath v. Bd. of Governors Marshall Univ.,*
447 F.3d 292 (4th Cir. 2006).......................................................35-37

*Roe v. Department of Defense*,
947 F.3d 207 (4th Cir. 2020)..........................................................18

*Rosario v. Rockefeller,*
410 U.S. 752 (1973)....................................................................28

* Cases principally relied upon.

*Rux v. Republic of Sudan*,
461 F.3d 461 (4th Cir. 2006)....................................................................2

*S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs,*
789 F.3d 475 (4th Cir. 2015)...........................................................19, 30

*Sciolino v. City of Newport News*,
480 F.3d 642 (4th Cir. 2007)..................................................................36

*Scrimgeour v. Internal Revenue*,
149 F.3d 318 (4th Cir. 1998)...........................................................32-33

*Sellers v. Bureau of Prisons,*
959 F.2d 307 (D.C. Cir. 1992)...............................................................21

*Silencer Shop v. ATF,*
6:25-cv-00056-H (N.D. Texas 2026)......................................................7

*Simmons v. United Mortg. & Loan Inv., LLC,*
634 F.3d 754 (4th Cir. 2011) ..................................................................30

*Sniadach v. Family Finance Corp.,*
395 U.S. 337 (1969)..................................................................................35

*Speech First, Inc. v. Fenves*,
979 F.3d 319 (5th Cir. 2020)...................................................................31

*Speech First, Inc. v. Schlissel*,
939 F.3d 756 (6th Cir. 2019)...................................................................31

*Spencer v. Kemna*,
523 U.S. 1 (1998)......................................................................................36

*Starbucks Corp. v. McKinney*,
602 U.S. 339 (2024).........................................................................16, 18

*Sterling* v. *Trust Co.,*
149 Va. 867 (1928)....................................................................................24

*Storer v. Brown*,
415 U.S. 724 (1974)....................................................................28

* *Strang v. United States Arms Control & Disarmament Agency*,
864 F.2d 859 (D.C. Cir. 1989)....................................................21-22

*Swint v. Chambers County Commission*,
514 U.S. 35 (1995)........................................................................2

*TitleMax of South Carolina, Inc. v. Spicher*,
25-2027 (4th Cir. 2026)................................................................35

*Tollitz* v. *Wabash R. R. Co.*,
207 N.Y. 113 (1912)....................................................................24

*Town of Castle Rock v. Gonzales*,
545 U.S. 748 (2005)....................................................................38

*United States v. Concentrated Phosphate Export Association*,
393 U.S. 199 (1968)................................................................29-30

*United States v. Hardy*,
545 F.3d 280 (4th Cir. 2008).........................................................30

*United States v. W.T. Grant Co.*,
345 U.S. 629 (1953)....................................................................30

*U.S. Parole Commission v. Geraghty*,
445 U.S. 388 (1980)....................................................................30

*Wall v. Wade*,
741 F.3d 492 (4th Cir. 2013).........................................................31

*Weisberg v. Department of Justice*,
745 F.2d 1476 (D.C. Cir. 1984)....................................................33

* *Williams v. Department of Veterans Affairs*,
104 F.3d 670 (4th Cir. 1997)...................................................16, 19-22

** Cases principally relied upon.*

*Winter v. Natural Resources Defense Council, Inc.*,
555 U.S. 7 (2008) .......... 18

*Wisconsin v. Constantineau*,
400 U.S. 433 (1971) .......... 36

*Wooley v. Maynard,*
430 U.S. 705 (1977) .......... 18

*Wynn v. Wachovia Bank*,
3:09-cv-136 (E.D. Va. 2009) .......... 13

**Federal Statutes**

5 U.S.C. § 552a .......... 1, 4, 19, 20, 21, 28, 31, 32
18 U.S.C. § 841 .......... 7
18 U.S.C. § 922 .......... 9-13
18 U.S.C. § 923 .......... 8
18 U.S.C. § 1964 .......... 29
26 U.S.C. § 501 .......... 5
26 U.S.C. § 5841 .......... 7
26 U.S.C. § 5871 .......... 7
28 U.S.C. § 1291 .......... 1-2
42 U.S.C. § 1983 .......... 36

**Code of Federal Regulations**

27 CFR § 478.121 .......... 7
27 CFR § 479.105 .......... 9
27 CFR § 479.131 .......... 7
27 CFR § 555.11 .......... 7
28 CFR § 16.40 .......... 1

**Federal Rules**

FEDERAL RULE OF CIVIL PROCEDURE 12............................1, 2, 16, 18, 26, 27
FEDERAL RULE OF CIVIL PROCEDURE 59............................................1, 25-27
FEDERAL RULE OF CIVIL PROCEDURE 65....................................................18

4th Cir. LOCAL RULE 8.............................................................................4

**State Code**

CODE OF VIRGINIA § 13.1-803...................................................................23
CODE OF VIRGINIA § 13.1-838...................................................................23
CODE OF VIRGINIA § 13.1-842...................................................................23
CODE OF VIRGINIA § 13.1-872...................................................................23
CODE OF VIRGINIA § 13.1-932...................................................................23
CODE OF VIRGINIA § 50-73.79...............................................................23-24

NEW JERSEY CODE §§ 17:30-11.9.............................................................10
NEW JERSEY CODE §§ 17:30-13.3.............................................................10
NEW JERSEY CODE §§ 17:30-16.2.............................................................10

**Treatises**

4 William Blackstone, COMMENTARIES.......................................................38
2 COOK ON CORPORATIONS (5th Ed.)..........................................................24

## II. Jurisdictional Statement

Plaintiff Appellant Matthew LeFande made a demand for his records under the Privacy Act and the Freedom of Information Act through Appellee ATF's FOIA internet portal in March of 2024. Compl. ¶ 39. The ATF failed to produce any records and on August 8, 2024, LeFande made formal demand to ATF for production and correction of these records. *Id.* ¶ 42. The ATF again failed to produce or correct these records and on December 18, 2024, LeFande filed suit in District Court as provided by the Judicial Redress Act, 5 U.S.C. § 552a(g), 28 CFR § 16.40(e)(1). The United States Attorney and the ATF were served by certified mail shortly thereafter. The United States Attorney appeared generally and moved to dismiss under Rule 12(b)(6) on behalf of ATF. LeFande timely opposed the motion. The District Court granted the motion and dismissed the cause on March 20, 2026. The District Court failed to serve LeFande with a copy of the Order until April 6, 2026. Nonetheless, on April 17, 2026, LeFande filed a timely Rule 59(e) Motion for Reconsideration. On July 10, 2026, while his Rule 59(e) motion was still pending, LeFande moved for a preliminary injunction. The District Court denied both motions on July 29, 2026. LeFande made a Notice of Appeal on August 7, 2026. Such timely appeal of the District Court's final decision attached this court' s jurisdiction under 28 U.S.C. §

1291 for both the dismissal and denial of the preliminary injunction as final orders. See, *e.g.*, *Polk v. Montgomery County Public Schools*, 25-1136 at 13 (4th Cir. January 28, 2026) (citing *Rux v. Republic of Sudan*, 461 F.3d 461, 475 (4th Cir. 2006) (citing, *inter alia*, *Swint v. Chambers County Commission*, 514 U.S. 35, 42 (1995))).

## III. Statement of Issues

1. By identifying the record which caused an adverse determination by Appellee ATF, LeFande's removal as the "Responsible Person" for his corporation's FFL, this Appellant perfected his Privacy Act claims and they could not be summarily dismissed premised upon the District Court's assertion that this was not a "record" covered by the Act.

2. LeFande was entitled to a *de novo* review of ATF's adverse determination and the reversal thereof.

3. No factual issue could be adjudicated on a Rule 12(b)(6) motion. LeFande was entitled to discovery and trial on these claims.

4. LeFande did not somehow forfeit consideration of the competent authorities he recited in timely rebuttal of the District Court's determination of the Rule 12(b)(6) motion.

5. LeFande amply demonstrated the required elements for a Preliminary Injunction in the District Court and was entitled to the imposition thereof.

## IV. Statement of the Case

### 1. Introduction

In September of 2023, non-party Jona Blocker, a woman Plaintiff Appellant Matthew LeFande cohabitated with in Woodbridge Virginia assaulted him. Shortly thereafter, LeFande obtained a Temporary Domestic Protection Order against Blocker in the Prince William County Courts. Starting in October 2023, Blocker began tendering forged letters and other fraudulent communications to Appellant Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) falsely claiming to be in charge of LeFande's company Commonwealth Protection Institute (CPI) and its Federal Firearms License (FFL).

Without any investigation into Blocker's claims and despite glaringly obvious defects in her documents and statements, the ATF changed its official records to remove LeFande as the "Responsible Person" for the CPI FFL and replace him with Blocker, a person with no authority whatsoever to act on behalf of CPI. LeFande formally demanded production and

correction of his records with ATF under the Privacy Act. The ATF failed to produce or correct these records. LeFande sued ATF in District Court under 5 U.S.C. § 552a(g).

As LeFande continued to endeavor to perform his official functions with CPI, ATF threatened LeFande with arrest, fines and imprisonment for conducting the exact same activities permitted under CPI's FFL. Each time ATF agents would appear at CPI's facilities, LeFande produced CPI's license certificates and records showing him and the company to be fully in compliance with the law. On June 1 and on July 1, 2026, these certificates expired. Despite ongoing demands to ATF to correct these records and renew his licenses correctly, LeFande no longer possesses current documents granting him immunity from the criminal charges claimed by ATF.

On July 10, 2026, LeFande moved for a preliminary injunction in the District Court. Such injunction was denied by the District Court on July 29, 2026 and LeFande timely appealed. Demonstrating he has been specifically threatened with unwarranted prosecution, on August 17, 2026 LeFande moved for the same relief before this court in accordance with this court's Local Rule 8.

### 2. Statement of Facts

Plaintiff Matthew LeFande is the founder of non-party Commonwealth Protection Institute (CPI), a non-stock corporation. See VA. H.J.R. 764 (2009). LeFande formed CPI in 2005 and appointed two other persons and himself to the Board of Directors. Pl.'s Ex. A, B. At that time, LeFande was appointed Secretary and Treasurer to CPI upon a unanimous vote of the CPI Board of Directors. Pl.'s Ex. E. As Secretary and Treasurer, LeFande was delegated complete authority and control over the books and accounts of the organization, including those accounts further described herein. *Id*. Such authority is unchanged to the present day. See Pl.'s Ex. SS.

Upon formation of the corporation, LeFande applied with the Internal Revenue Service for an Internal Revenue Code 501(c)(3) classification. Upon receipt of this classification, LeFande has endeavored over two decades to comport with the limitations of the section, to include maintaining the corporation's property for academic and charitable purposes, and not allowing any income or assets of the corporation to inure to private persons.

LeFande was initially trained and certified as a general subject matter law enforcement instructor and law enforcement firearms instructor by the

Maryland Police Training Commission, Pl.'s FF, and has been a general subject matter and firearms instructor for DCJS for more than twenty years. Pl.'s Ex. GG. LeFande has been trained and certified as a law enforcement handgun and rifle armorer more than twenty years. Pl.'s Ex. HH, II, JJ. LeFande further has a wide spectrum of skills in welding, machining, toolmaking and fabrication through informal practice over several decades.

For approximately fourteen years, CPI has been situated on a large training campus in Fauquier County now known as Midland Training Center. Prior to its presence in Fauquier County, CPI was based in similar outdoor training campuses in Stafford and then Culpeper County. Since its inception, CPI has offered specialized training to government agencies and the military in the operation of foreign weapons indigenous to overseas conflict zones. See Pl.'s Ex. KK. During this time, LeFande has built up a library of East Bloc and European military firearms appropriate to CPI's training mission. LeFande's efforts in this regard have included the manufacture of firearms regulated under the National Firearms Act, chapter 53 of the Internal Revenue Code (NFA), on behalf of CPI.

CPI holds an ATF Federal Firearms License, number 1-54-061-07-9F-23858. (FFL). Pl.'s Ex BB. CPI is a Special Occupational Taxpayer, authorized by the ATF to manufacture and deal in firearms regulated by the

NFA.[1] Pl.'s Ex CC. As an FFL licensee and a Special Occupational Taxpayer, CPI, by and through LeFande as its designated "Responsible Person" (see 18 U.S.C. § 841(s), 27 CFR § 555.11), is responsible for accounting for and safeguarding all firearms in its possession, maintaining a written record of the origin and disposition of any firearm it receives or manufactures. 27 CFR §§ 478.121, 479.131, 26 U.S.C. § 5841. Violations of these record-keeping requirements can implicate criminal penalties of fines of up to $10,000 or imprisonment up to ten years. 28 U.S.C. § 5871. LeFande has been the sole signatory to every transaction of CPI with ATF since the organization's inception in 2005. See, *e.g.*, Pl.'s Ex. F.

To become the "Responsible Person" for CPI's FFL, LeFande had to undergo a burdensome application process with the ATF. The Privacy Act notices on the ATF's own forms employed to determine a "Responsible Person" states that the purpose of the collection of this information is

> To determine the identity and eligibility of the applicant to obtain a Federal Firearms License, the identity and eligibility of all responsible persons, the ownership of the business, the type of firearms or ammunition to be dealt in, the business hours, and the business history.

---

[1] The recent final judgment in *Silencer Shop v. ATF*, 6:25-cv-00056-H (N.D. Texas August 5, 2026), while effectively removing large classes of firearms from the NFA, does not speak to NFA regulated machine guns, the manufacture thereof is the crux of the present threatened prosecution by ATF against LeFande.

ATF Form 7(5310.12A) at 6.[2]

> Solicitation of this information is authorized pursuant to 18 U.S.C. § 923(a) of the Gun Control Act of 1968. Disclosure of this information is mandatory if the applicant wishes to obtain a Federal Firearms License. System of Record Notice (SORN) Justice/ATF-008 Regulatory Enforcement Record System FR Vol. 68 No. 163558 dated January 24, 2003.

*Id.*[3]

The Gun Control Act states here in relevant part:

> No person shall engage in the business of importing, manufacturing, or dealing in firearms, or importing or manufacturing ammunition, until he has filed an application with and received a license to do so from the Attorney General. The application shall be in such form and contain only that information necessary to determine eligibility for licensing as the Attorney General shall by regulation prescribe and shall include a photograph and fingerprints of the applicant.

18 U.S.C. 923(a).

LeFande's qualifications and authority to act as the "Responsible Person" for CPI's Federal Firearms License were entirely predicated upon his personal information being tendered to the agency and maintained in a system of records. This information included LeFande's full name, aliases, address, social security number, date of birth, place of birth, telephone

---

[2] Available at https://www.atf.gov/media/22321/download (accessed August 31, 2026).

[3] ATF's SORN explicitly protects "Responsible Persons" as individuals. https://www.federalregister.gov/documents/2017/09/25/2017-20352/privacy-act-of-1974-systems-of-records (accessed September 3, 2026).

number, email address, photograph, fingerprints, height, weight, race, sex, ethnicity, hair color, eye color, licensing history, criminal history, mental health treatment history, drug use (or lack thereof), military history and citizenship. ATF Form 7 at 1-2, *supra*. To the present day, CPI maintains seventy-six "Post-1986 Dealer Sample"[4] machine guns, each manufactured by LeFande's own hand, in its inventory at the Midland Training Center.

In 2023, LeFande was living with a woman named Jona Blocker in her home in Woodbridge Virginia. LeFande met Blocker in 2017 while displaying his firearm creations at a public gun show in Chantilly Virginia. LeFande was aware from the onset the relationship of Blocker's illicit drug use, see Pl.'s Ex. LL, MM, but Blocker appeared to be professionally successful and without any particular behavioral issues indicating drug abuse.

---

[4] The 1968 Gun Control Act, as amended, prohibits the transfer or possession of machine guns made after May 1986, except by a federal, state or local government agency. 18 U.S.C. § 922(o). Type 2 Special Occupational Taxpayers such as CPI may produce post-1986 machine guns and maintain them in inventory for the specific purpose of sales and demonstration to the government. See 27 CFR § 479.105(c). These long standing regulatory impediments to the marketplace have created a situation where the some 186,600 existing pre-1986 transferable machine guns available to the public are highly coveted by collectors and enthusiasts, and routinely command tens or hundreds of thousands of dollars in the retail marketplace. Blocker and her co-conspirators maintain obvious designs on seizing CPI's firearms inventory for their personal pecuniary interests. See V. Compl. in *LeFande v. Blocker*, 1:26-cv-1271, ECF #1 (E.D. Va. 2026).

While having no formal firearms training, Blocker took a strong interest in CPI's firearms training programs from onset and repeatedly expressed a desire to participate in CPI's activities. At no time has Blocker ever been made a member of CPI, nor appointed an officer to the corporation. See Pl.'s Ex. SS. At various times, she was permitted to represent herself as a consultant and volunteer for the school. Having no law enforcement or military background whatsoever, Blocker simply was not qualified, and apparently disqualified, to take any further role in CPI's activities.

On July 9, 2022, Blocker's tenant, James Manning, a retired District of Columbia Metropolitan Police Department Sargent, traveled to a marijuana dispensary located at 640 Creek Road in Bellmawr New Jersey. Pl.'s Ex. NN. Manning purchased a large quantity of marijuana from the dispensary and transported it back to Blocker's house in Woodbridge.

During this time, this particular dispensary company was under investigation by the New Jersey Cannabis Regulatory Commission and would subsequently receive a multitude of sustained violations involving the mislabeling of its products and failing to test its products as required by New Jersey Code §§ 17:30-11.9, 13.3 and 16.2. Pl.'s Ex. OO.

Blocker and Manning consumed this questionable marijuana together over a period of several days in Blocker's rental property adjacent to her home in Woodbridge. LeFande began to note increasingly erratic and paranoid behavior by Blocker subsequent to her consumption of Manning's marijuana. See Pl.'s Ex. PP.

In June of 2023, at the behest of Blocker, LeFande negotiated and executed an agreement on behalf of CPI to conduct a firearms demonstration at the Midland Training Center for KGM, a Georgia manufacturer of firearms silencers. Along with a large number of CPI volunteers, LeFande conducted the demonstration as requested, but noticed increasing demands by Blocker to make all decisions regarding the conduct of CPI. See Pl.'s Ex. PP.

On September 13, 2023, LeFande gave notice to KGM and Blocker that CPI would not be conducting a second demonstration for them at the Midland Training Center. Pl.'s Ex. G. That day and/or the following day, Blocker assaulted LeFande by lacing his food with controlled prescription drugs not his own. See Pl.'s Ex. QQ.

On September 25, 2023, following the return of an affirmative blood test for these prescription drugs in his system, Pl.'s Ex. RR, LeFande obtained an emergency domestic protection order from the Prince William

County Juvenile and Domestic Relations Court against Blocker. Pl.'s Ex. I. By October 6, 2023, LeFande had vacated Blocker's residence as he continued to seek a permanent domestic protection order against her.

On October 19, 2023, Blocker made her first email to ATF, claiming the current "responsible persons… have been removed from control of [CPI]. Pl.'s Ex. J. Blocker was without any authority to speak on behalf of CPI. See Pl.'s Ex. SS. No resolution of the CPI Board of Directors authorized any of the actions Blocker claimed to take. *Id*.

ATF accepted Blocker's false claims and forged documents without question and removed LeFande its records as CPI's "responsible person". See Pl.'s Ex. J-K, N-S, V-X. Blocker moved the premises location of CPI's Federal Firearms License from the Midland Training Center to her rental property adjacent to her home in Woodbridge, where a convicted felon presently resides. ATF made no attempt to contact CPI at the address, phone number or email address listed on the original license applications prior to making these changes. As a result, LeFande would not learn of these changes until early 2024. In March 2024, LeFande began notifying ATF that Blocker had made these changes fraudulently and demanded they be corrected. Pl.'s Ex. W. The ATF refused to do so. *Id*.

LeFande immediately made Privacy Act and FOIA demands to ATF for production of the documents and correspondence related to this fraud. 2024-PA-21 and 2024-00953. These production requests were unanswered and on August 8, 2024, LeFande made a formal complaint to ATF. Pl.'s Ex. Y. Such request was delivered to ATF on August 12, 2024. *Id.* This complaint was unanswered and on December 18, 2024, LeFande filed suit in this case.

On January 8, 2025, LeFande made ordinary notice to ATF on behalf of CPI of the manufacture of a new machine gun in accordance with 18 U.S.C. § 922(o). Pl.'s Ex. Z. On February 27, 2025, two Special Agents of ATF made an unannounced visit to the Midland Training Center and delivered a letter addressed to LeFande personally and claiming he was violating the National Firearms Act by making a machine gun without first registering the firearm with ATF. Pl.'s Ex. AA.[5] LeFande immediately produced the ATF-approved registration document for the same firearm, Pl.'s Ex. Z, and copies of current and valid certificates for CPI's FFL and Special

---

[5] As Virginia law does not recognize "compelled self publication", LeFande again attempts to file this *per se* defamatory document under seal. See *Wynn v. Wachovia Bank*, 3:09-cv-136-JRS ECF # 15 at 5-6 (E.D. Va. May 6, 2009). See ECF # 19 in the underlying case and this court's docket # 9-10.

Occupational Tax registrations. Pl.'s Ex. BB and CC. Such certificates displayed the address for the Midland Training Center as the correct addresses for the premises location for these licenses. LeFande further invited an inspection of all the records of such NFA activities and the inventory of all firearms at the Midland Training Center. LeFande pointed out the peculiar lunacy of the agents claiming LeFande had illegally manufactured one machine gun while ignoring that LeFande was obviously in immediate possession of more than seventy other post-1986 dealer sample machine guns at Midland Training Center (as he remains so to the present day). The agents instead simply sulked away after acknowledging that all of LeFande's paperwork was in proper order. The letter claiming LeFande's NFA violations and specifically targeting him for prosecution has never been modified or withdrawn.

The ATF failed to respond to LeFande's March 21, 2024 Privacy Act and FOIA requests until March 3, 2025, and then only in concert with the ATF's Motion to Dismiss. ECF # 8-3. The documents were riddled with unwarranted redactions and being more than a year old, could not form the evidentiary basis for making a criminal complaint against Blocker with local authorities. LeFande demanded the immediate production of the unredacted

documents from ATF, but has not received them to the present day. The District Court never permitted LeFande to obtain discovery in this case.

On March 20, 2026, the District Court dismissed this case. ECF # 23.

On June 1, 2026, CPI's existing FFL certificate expired. A new certificate has been issued by ATF to Blocker at her address in Woodbridge. LeFande has attempted to correct the address back to Midland with ATF, but has been informed that he is not the "Responsible Person" on the FFL to make such a change by the same ATF supervisor accusing him of violating the NFA. Pl.'s Ex. UU. LeFande has paid the annual Special Occupational Taxpayer's tax for the manufacturer's certificate for CPI which otherwise expired on July 1, 2026, but such certificate again bears the unauthorized and inappropriate Woodbridge address.

On July 10, 2026, LeFande tendered to the District Court a Motion for a Preliminary Injunction citing the recent expiration of the license certificates as creating an immediate threat of his unjustified arrest and prosecution. ECF # 28. On July 29, 2026, the District Court denied LeFande's Motion for Reconsideration and Motion for Preliminary Injunction. ECF # 30. LeFande timely appealed.

## V. Summary of the Argument

LeFande identified the incorrect records held by ATF causing him an adverse determination which amounts to unlawful interference in his trade and a threat of unwarranted prosecution. There was no requirement for LeFande to further identify a system of records. The District Court erred in claiming that LeFande's status as a "Responsible Person" for his corporations FFL was not a record for the purposes of the Privacy Act. *McCready v. Nicholson,* 465 F.3d 1, 8 (D.C. Cir. 2006), *Williams v. Department of Veterans Affairs*, 104 F.3d 670, 674 (4th Cir. 1997). LeFande has been specifically targeted for prosecution as a direct result of ATF's incorrect records and therefore maintains standing to seek redress in the federal courts. *Ord v. D.C.,* 587 F.3d 1136, 1140 (D.C. Cir. 2009). The District Court could not ignore competent authorities raised by LeFande in a Rule 59(e) Motion responding to a Rule 12(b)(6) dismissal. *Guzman v. Acuarius Night Club LLC*, 24-1555 at 6-7 (4th Cir. February 14, 2026). LeFande has demonstrated irreparable harm to his person and remains entitled to an injunction. *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345 (2024).

## VI. Argument

As of June 1, 2026, for the first time since the inception of CPI's Federal Firearms License and by no fault of his own, LeFande is now without proper documentation demonstrating his authority to possess highly controlled firearms on behalf of CPI. LeFande faces an immediate threat of an unwarranted and bad faith prosecution for a regulated activity he remains otherwise completely in conformance with the law. Plaintiff's Exhibit AA amply demonstrates he has been "singled out or uniquely targeted by the... government for [enforcement]." *Ord v. D.C.,* 587 F.3d 1136, 1140 (D.C. Cir. 2009).

"[W]hen a genuine threat of prosecution exists, a litigant is entitled to resort to a federal forum to seek redress for an alleged deprivation of federal rights." *Wooley v. Maynard,* 430 U.S. 705, 710 (1977). Of course, "a credible threat of prosecution" can act to excuse the sort of pre-enforcement bar to standing that often exists, since a plaintiff "should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." *Holder v. Humanitarian Law Project,* 561 U.S. 1, 15 (2010) (quoting *Babbitt v. Farm Workers,* 442 U.S. 289, 298 (1979)). "[I]n a proper case, relief may be given in a court of equity... to prevent an injurious act by

a public officer." *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 325 (2015).

Federal Rule of Civil Procedure 65 authorizes a preliminary injunction where appropriate. The District Court has denied this relief without the slightest effort to address the merits thereof. Herein, LeFande makes a "clear showing that 'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345 (2024) (quoting *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20, 22 (2008)).

**1. Standard of Review.**

This court reviews granting of a Rule 12(b)(6) motion *de novo*. *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017) (citing *E.I. du Pont de Nemours & Co. v. Kolon Industries, Inc.,* 637 F.3d 435, 440 (4th Cir. 2011)). This court will reverse a denial of a preliminary injunction premised upon an error of law. *Doe v. Office of the Director of National Intelligence*, 25-1527 at 13 (4th Cir. July 2, 2026) (citing *Roe v. Department of Defense*, 947 F.3d 207, 219 (4th Cir. 2020)). The District Court denied LeFande's preliminary injunction as moot after dismissing the cause outright and the record

indicates no factual conclusion made by the District Court relied upon in this denial. No abuse of discretion standard is applicable herein. This court reviews a district court's dismissal based on mootness *de novo*. *S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs,* 789 F.3d 475, 482 (4th Cir. 2015).

**2. LeFande prevails on the merits of his Privacy Act claims.**

**a. LeFande has already identified the specific ATF record which is incorrect and adverse to him, and therefore, perfected his Privacy Act claims.**

ATF has failed "to maintain [a] record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual". 5 U.S.C. § 552a(g)(1)(C). "[T]he legislative history of the Act makes it clear that a 'record' was meant to 'include as little as one descriptive item about an individual.'" *Williams v. Department of Veterans Affairs*, 104 F.3d 670, 674 (4th Cir. 1997)(citation omitted). "The Privacy Act can be used to correct *facts* [about the person] if those facts are recorded erroneously." *Reinbold v. Evers*, 187 F.3d 348, 361 (4th Cir. 1999) (emphasis *sic*).

> [T]o bring a claim under § 552a(g)(l)(C), an individual need not address how agencies maintain their systems of records, but instead must show that:
>
> "(1) [he] has been aggrieved by an adverse determination; (2) the [agency] failed to maintain [his] *records* with the degree of accuracy necessary to assure fairness in the determination; (3) the [agency's] reliance on the inaccurate *records* was the proximate cause of the adverse determination."

*McCready v. Nicholson,* 465 F.3d 1, 8 (D.C. Cir. 2006) (quoting *Peters v. U.S. Parole Commission*, 85 F.3d 655, 657 (D.C. Cir. 1996)) (emphasis added in *McCready*, footnote omitted).

> Where an aggrieved person can identify a specific document, prove its inaccuracy, and demonstrate that the document was used against her, all the values of the Act are vindicated. As a subsection (g)(1)(C) claim is predicated upon an individual simply challenging the accuracy of a particular document used against her, there was no need for subsection (g)(1)(C) to incorporate a system of records requirement and thereby prevent a fishing expedition. The fish has already been caught at no expense to the agency. Thus, subsection (g)(1)(C) applies to *"any record,"* and not "any record within a system of records," as the VA would have us alter the statute. If the VA believes that this provision of the Privacy Act is too burdensome in requiring it to accurately maintain a record specifically brought to its attention, and thinks that the Act should first require individuals to demonstrate the existence of a system of records, the VA is free to raise that concern with Congress. Congress can amend the Privacy Act; we, however, must follow its text.

*Id. at 12.*

Given the burdensome application process as described above, it is obvious that LeFande's status as a "Responsible Person" for his company's FFL is necessarily part of a system of records "which are maintained by an

agency, retrieved by individual identifier…" *Williams*, 104 F.3d at 675 (citation omitted). See also Pl.'s Ex. UU (June 8, 2026 letter from ATF incorrectly claiming, evidently based on a search of their system of records, that LeFande is not the "Responsible Person" for his corporation and rejecting another attempt to correct the premises address for the FFL without permission of Jona Blocker). "[B]ecause the ROC *can be* retrieved by Appellant Williams's client number, and may in fact have been so, we vacate the judgment of the district court and remand." *Williams*, 104 F.3d at 676 (emphasis *sic*).

LeFande maintains a properly justiciable "Privacy Act case because the facts at issue [are] clearly provable." *Sellers v. Bureau of Prisons*, 959 F.2d 307, 311 (D.C. Cir. 1992) (citing *Strang v. United States Arms Control & Disarmament Agency,* 864 F.2d 859, 866 (D.C. Cir. 1989)). "The Privacy Act requires that a court consider *de novo* an agency's refusal to amend its records. 5 U.S.C. § 552a (g) (2) (A)." *Strang,* 864 F.2d at 866.

> [*Doe v. United States,* 821 F.2d 694 (D.C. Cir. 1987) (*en banc*)] does not support the broad proposition advanced by ACDA that the district court need not determine definitively the accuracy of the agency's records, as long as the agency somehow can be said to have acted fairly. The *Doe* court stated that " '*de novo*' ... has no different, diminished meaning in the context" of section (e)(5), but requires "here, as it ordinarily does, a fresh, independent determination of 'the matter' at stake; the court's inquiry is not limited to or constricted by the administrative record, nor is any deference due the agency's conclusion." *Id.* at 697-98. "In the *typical* Privacy Act case," the

> court continued, "it is feasible, necessary, and proper for the agency and, in turn, the district court to determine whether each filed item of information is accurate." *Id*. at 699 (emphasis added).

*Id*. See also *McCready*, 465 F.3d at 19 ("further inquiry was necessary 'in light of McCready having brought her attendance at the committee meeting to the Inspector General's attention'").

The District Court's conclusion that the ATF's records identifying LeFande as authorized to conduct a highly regulated activity were not "records" for the purpose of the Privacy Act is clearly in conflict with *Williams*, *McCready* and *Strang*. Neither the District Court nor ATF made any argument to distinguish or overrule LeFande's recited authorities.

> LeFande's prior citation to *McCready* completely defeats any suggestion that he does not make a complete compensable claim for violation of the Privacy Act. Rather than address the merits of that case, the United States Attorney now simply ignores the citation in its Opposition. Perhaps, if the United States Attorney had suggested, tongue in cheek, that the District of Columbia Circuit is an inconsequential backwater jurisdiction not capable of properly gauging the standards of conduct for federal government agencies and this court should therefore not follow the holding of *McCready*, there would be some semblance of an argument. Instead, the United States Attorney does not mention the 2006 case which lacks any subsequent caselaw overruling *McCready* or distinguishing the holding from the instant claims. The silence is deafening, and this point necessarily must now be treated as conceded.

*LeFande v. ATF*, 1:24-cv-2311, ECF # 27 at 5 (E.D. Va. 2026) (spelling corrected).

**b. Blocker's correspondence with the ATF is demonstrably fraudulent.**

Under Code of Virginia § 13.1-803, a non-stock corporation's Board of Directors is vested with the management of the business of the corporation. Meetings of the Board of Directors must be conducted in accordance with the corporation's bylaws. *Id*. § 13.1-838 (B). "A corporation shall notify members of the date, time, and place, if any, of each annual and special members' meeting. Such notice shall be given no less than 10 nor more than 60 days before the meeting." *Id*. § 13.1-842 (A). As Secretary of the corporation, LeFande is the sole custodian of the records of the corporation. *Id.* § 13.1-872. Such records include any meeting of the Board of Directors. *Id*. See also, *id*. § 13.1-932. No such Board of Director's meeting ever occurred either granting Blocker any authority to speak on behalf of CPI or in any way diminishing LeFande's authority to act regarding CPI's Federal Firearms License.

As is often the case, in her correspondence with ATF, Blocker employs words which she has overheard previously, but does not quite comprehend their legal meaning. Blocker's use of the term "management [sic] partner" and later, "manager/partner", of CPI for herself at once belies her ignorance of corporation law and her lack of authority to act for CPI. A "'Partnership' means an association of two or more persons to carry on as

co-owners a business for profit…" CODE OF VIRGINIA § 50-73.79. A non-stock corporation such as CPI can have neither owners of any kind nor can it be conducted for profit without running afoul of the Internal Revenue Code. Blocker appears to attempt to use the term "managing partner" but lacks a sufficient knowledge of the subject matter to use the correct term. Blocker simply bypasses all of the corporate formalities of CPI bylaws and the law of the Commonwealth to install herself in a position which by its very definition, violates those laws which permit CPI's existence.

> Directors are the exclusive, executive representatives of the corporation, and are charged with the administration of its internal affairs and the management and use of its assets. *Tollitz* v. *Wabash R. R. Co.,* 207 N.Y. 113 [(1912)]... Corporations are the creatures of the state, and must comply with the exactions and regulations it imposes.

*Kaplan v. Block*, 183 Va. 327, 332 (1944) (quoting *Manson* v. *Curtis,* 223 N.Y. 313 (1918)).

A corporation's directors "appoint the agents, direct the business, and govern the policy and plans of the corporation. The directors elect the officers…" *Id*. at 331. (quoting *Sterling* v. *Trust Co.,* 149 Va. 867 (1928) (quoting 2 COOK ON CORPORATIONS (5th Ed.) section 712)). Just weeks after assaulting LeFande with dangerous drugs, Blocker simply appointed herself in charge of CPI and moved the premises of the corporation to a house in Woodbridge wholly unsuitable for the manufacture or storage of machine

guns. No notice of a Board of Directors meeting, no meeting, no vote, and no resolution which could have possibly authorized this action. To the present day, Blocker possesses none of the records of the corporation, none of the inventory of the Federal Firearms License, no security measures necessary to maintain controlled firearms safely and has a convicted felon for a tenant residing in the same home. Rather than providing training to the government consistent with CPI's mission, Blocker presides over a litany of extortionate and fraudulent schemes against the government and its contractors, including the attempted misappropriation of dozens of highly-regulated machine guns.

Blocker's ignorance regarding these fundamental concepts of corporation law, together with her apparent inability and unwillingness to abide by Virginia and Federal statutes, reveals the true extent of these frauds. This court may now readily discern by the evidence available that Blocker has no authority whatsoever meddling in the affairs of LeFande's corporation.

**c. The District Court could not simply ignore LeFande's authorities brought to the Court's attention in the form of a Rule 59(e) motion.**

ATF appears to mistakenly rely upon the District Court's curious proposition that it could completely ignore LeFande's authorities rebutting

the Court's legal conclusions simply because they were contained in a Rule 59(e) Motion. These sort of claimed procedural defaults are flatly prohibited in a Rule 12(b)(6) determination.

> [A] 12(b)(6) motion challenges solely the legal sufficiency of the complaint, considered with the assumption that the facts alleged in it are true. See *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). Accordingly, a ruling under Rule 12(b)(6) presents a pure question of law, which simply inquires whether the complaint alleges sufficient factual matter, accepted as true, to provide a sufficient basis to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.v. Twombly*, 550 U.S. 544, 570 (2007)). Because Rule 12(b)(6) specifies no other ground for granting a motion to dismiss, it follows that it can be granted only if the complaint on its face fails to state a plausible claim upon which relief can be granted. And vice versa, a motion to dismiss under Rule 12(b)(6) must be denied if the complaint on its face alleges a plausible claim for relief. This textual formulation does not admit of granting a motion to dismiss on the basis that a party failed to respond to it — *i.e.*, the Rule does not provide for default relief for a failure to respond. A party's failure to respond may preclude that party from later providing its arguments on the motion, but it does not relieve the court of determining whether the complaint is legally sufficient on its face. That determination can be based only on whether the complaint, with its factual matter, accepted as true states a plausible claim to relief.

*Guzman v. Acuarius Night Club LLC*, 24-1555 at 6-7 (4th Cir., February 14, 2026).

Thus, the District Court and the ATF ignored LeFande's recital of additional authorities in his Rule 59(e) argument at their peril. There was no argument which LeFande ever eschewed in response to the claims contained in the ATF's Rule 12(b)(6) Motion and neither the District Court nor the ATF

identify any such. They simply wish for a pure issue of law to not be subject to review relying upon the federal appellate authorities on point that LeFande offered in his Rule 59(e) Motion.

When confronted with a dismissal that LeFande's records with the ATF did not constitute records for the purposes of the Privacy Act, LeFande rightfully used his timely Rule 59(e) Motion to demonstrate such a cursory dismissal was outright prohibited once LeFande had identified the incorrect agency records and perfected his claim. LeFande used Rule 59(e) "to correct a clear error of law or prevent manifest injustice." *Hill v. Braxton,* 277 F.3d 701, 708 (4th Cir. 2002) (quoting *Collison v. International Chemical Workers Union,* 34 F.3d 233, 236 (4th Cir. 1994)).[6]

**d. The District Court's statement that LeFande is not the "Responsible Person" for his corporation is an impermissible factual conclusion in the context of a Rule 12(b)(6) motion.**

While the District Court may have been paraphrasing LeFande's claims, that LeFande is not the "Responsible Person" for his corporation but for the illegal conduct of ATF and Blocker, ECF # 23 at 8, the Appellant must be careful herein not to misinterpret the statement and possibly waive

---

[6] Rather than reviewing and addressing these authorities whatsoever, both the District Court and the ATF ridicule LeFande for offering humility in the difficult circumstances of a *pro se* litigant needing to demonstrate they are both wrong about the law.

an argument over what may well be an ill-timed factual conclusion contributing to the dismissal of his cause. If Blocker obtained this authority by fraud and it is indeed a legal nullity, the agency has failed "to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual". 5 U.S.C. § 552a(g)(1)(C). This is a pure issue of fact that must be adjudged at trial.

**e. None of LeFande's claims are moot.**

LeFande maintains a live controversy as the ATF failed to timely produce his records for a year after they were due and then only after LeFande filed suit. Such delay was not *de minimis* and caused LeFande very concrete harms which persist to the present day. The District Court's decision distinguishing LeFande's citation to *Greidinger v. Davis*, 782 F. Supp. 1106, 1109 (E.D. Va. 1992), *rev'd on other grounds*, 988 F.2d 1344 (4th Cir. 1993) (quoting *Storer v. Brown,* 415 U.S. 724, 737 n.8 (1974) (citing *Rosario v. Rockefeller,* 410 U.S. 752, 756 n.5 (1973))), marks yet another instance of the court acting contrary to established precedent and

avoiding discussion of additional authorities on point. Dealing with a *pro se* litigant does not give the District Court license to ignore *stare decisis* and eschew controlling decisions of this circuit simply because LeFande hasn't found them yet. This has now happened too many times to be coincidence.[7]

It is indisputable that the ATF failed to act within the confines of the Privacy Act for a year following LeFande's initial requests for his records. See Def.'s Ex. A-C (E.D. Va. ECF # 8). Production of records only occurred simultaneously with the United States Attorney's filing of a motion to dismiss. *Id.* This situation is absolutely governed by voluntary cessation doctrine. The ATF's claim of mootness caries a heavy burden and must show it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Porter v. Clarke*, 852 F.3d 358, 360

[7] In one instance last year, the District Court foreclosed any form of injunctive relief under the RICO statutes as sought by LeFande in the above identified related cases. "Section 1964 does not authorize private RICO plaintiffs to sue for prospective injunctive relief." *LeFande v. Blocker*, 1:25-cv-54, ECF #23 at 14 (E.D.Va. September 30, 2025) (quoting *Hengle v. Treppa*, 19 F.4th 324, 356 (4th Cir. 2021)). However, LeFande indeed made a prayer for equitable relief in the alternative in his original Complaint, and this alone should have carried the day. "Because Amazon's common law claims for equitable relief support the injunction, we do not address the RICO claims…" *Amazon.com, Inc. v. WDC Holdings LLC*, 20-1743 at 6 (4th Cir. Aug. 31, 2021). This is particularly problematic as while this opinion was unpublished, the same District Court judge was presiding over *Amazon.com* by January of 2022 and the case remains actively litigated and headed for trial. 1:20-cv-484-RDA-IDD.

(4th Cir. 2017) (quoting *United States v. Concentrated Phosphate Export Association*, 393 U.S. 199, 203 (1968)).

> "[T]he doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction," *Simmons v. United Mortg. & Loan Inv., LLC,* 634 F.3d 754, 763 (4th Cir. 2011) (alteration in original) (internal quotation marks omitted) (quoting *United States v. Hardy,* 545 F.3d 280, 283 (4th Cir. 2008)), which extends only to actual cases or controversies, U.S. Const. art. III, § 2. When a case or controversy ceases to exist — either due to a change in the facts or the law — "the litigation is moot, and the court's subject matter jurisdiction ceases to exist also." *S.C. Coastal Conservation League,* 789 F.3d at 482. Put differently, "a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496 (1969); see also *Arizonans for Official English v. Arizona,* 520 U.S. 43, 68 n.22 (1997) ("Mootness has been described as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" (quoting *U.S. Parole Comm'n v. Geraghty,* 445 U.S. 388, 397 (1980))).
> …
> There is, however, a well-recognized exception to the mootness doctrine holding that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289 (1982); see also *United States v. W.T. Grant Co.,* 345 U.S. 629, 632 (1953) ("[V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the ease, *i.e.,* does not make the case moot.").
>
> The voluntary cessation exception "traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." *City News & Novelty, Inc. v. City of Waukesha,* 531 U.S. 278, 284 n.1 (2001). Accordingly, the exception seeks to prevent "a manipulative litigant immunizing itself from suit indefinitely, altering its behavior long enough to secure a dismissal and then reinstating it immediately after." *ACLU of*

> *Mass. v. U.S. Conference of Catholic Bishops,* 705 F.3d 44, 54-55 (1st Cir. 2013) (citing *Already, LLC v. Nike, Inc.,* 133 S.Ct. 721, 727 (2013)); see also *Knox v. Serv. Emps. Int'l Union, Local 1000,* 567 U.S. 298 (2012) ("The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed."). To that end, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." [*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 190 (2000)].

*Porter*, 852 F.3d at 363-364 (parallel citations, footnote omitted).

"[A] defendant fails to meet its heavy burden to establish that its allegedly wrongful behavior will not recur when the defendant 'retains the authority and capacity to repeat an alleged harm.'" *Id*. (quoting *Wall v. Wade*, 741 F.3d 492, 497 (4th Cir. 2013)). Here, the ATF's timing of production of the documents LeFande demanded a year earlier wasn't suspicious, it was blatantly concurrent with the United States Attorney's motion demanding that the case be dismissed for mootness. See *Speech First, Inc. v. Fenves*, 979 F.3d 319, 328 (5th Cir. 2020) (finding a university's decision to change the language of certain policies related to its bias reporting program did not moot plaintiff's First Amendment claims); *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 769–70 (6th Cir. 2019) (same).

The Privacy Act provides for damages for the ATF's failure to abide by it. Even if ATF had provided LeFande all documents required under the

Act, it did so in a very untimely manner and statutory damages are implicated. Further, LeFande still demands correction of the same records and again, statutory damages are implicated. Yet still, the ATF failed to safeguard LeFande's records in the very manner they now demand of LeFande. Pl.'s Ex UU. Again, statutory damages are implicated. "If the Defendants continue to violate the statute, making only untimely disclosures to complaining parties, the statute's purpose will never be effected." *Greidinger*, 782 F. Supp. at 1109.

In this same vein, the court should afford LeFande the opportunity to inquire in discovery *why* these documents were withheld from him for nearly a year, particularly where they appear on their face to demonstrate extraordinary ineptitude on the part of certain ATF employees charged with examination of these documents or perhaps some degree of complicity in Blocker's schemes. See 5 U.S.C. § 552a(g)(4) (requirement of determination "that the agency acted in a manner which was intentional or willful" as a predicate to an award of damages or fees). "The standard for intentional or willful behavior under the Privacy Act has been articulated as 'an act committed without grounds for believing it to be lawful, or by flagrantly disregarding others' rights under the Act." *Reinbold*, 187 F.3d at

361 n.14 (quoting *Scrimgeour v. Internal Revenue*, 149 F.3d 318, 326 (4th Cir. 1998)) (additional citations and quotation marks omitted).

This certainly is not an insurmountable burden under this fact pattern, but necessarily requires the identification of each of the persons named in these documents in discovery as potential witnesses and the further examination of other internal correspondence which may have been withheld from the Privacy Act production. The heavily redacted production came just one day before ATF's present Motion to Dismiss, hand in glove with its present claim that such production now renders LeFande's claims moot. There can be no more explicit demonstration that such production never would have happened but for LeFande's litigation and any claim to the contrary is patently disingenious. See *Reinbold*, 187 F.3d at 363 ("the lawsuit must have resulted in the release of records that would not otherwise have been released") (citing *Gowan v. U.S. Department of the Air Force*, 148 F.3d 1182, 1195 (10th Cir. 1998); *Chesapeake Bay Foundation, Inc. v. Department of Agriculture*, 11 F.3d 211, 216 (D.C. Cir. 1993); *Maynard v. C.I.A.*, 986 F.2d 547, 568 (1st Cir. 1993); *Weisberg v. Department of Justice*, 745 F.2d 1476, 1496 (D.C. Cir. 1984)).

**3. Absent this court's intervention, LeFande faces a very real threat of irreparable harm in the form of a bad faith prosecution and ongoing interference with his trade and profession.**

It is simply inexplicable that a person with a title of Supervisory Legal Instruments Examiner for ATF's National Firearms Act Branch could not readily detect Blocker's frauds as they were initiated in October of 2023. See Pl.'s Ex. P. Rather than acknowledge this ridiculous mistake by ATF employees and take affirmative steps to remediate and mitigate the injuries to LeFande, members of the Falls Church Field Office have repeatedly doubled down. LeFande has been raided twice at CPI's proper premises location and formally threatened with prosecution by federal agents for an activity he has every legal right to conduct. Pl.'s Ex. AA. See also Pl.'s Ex. UU.

LeFande has been prolific and efficacious in his creation of a foreign weapons library for CPI's government training programs. The ATF's unwarranted threats against him, and the District Court's persistent inaction, have left LeFande unable to conduct his craft for more than a year and now threaten the very existence of the corporation. This is exactly the intended result for certain persons within the government. See Richard Posner's rather vivid opinion in *Backpage.com, LLC v. Dart*, 807 F.3d 229, 237-238 (7th Cir 2015).

In the face of overwhelming evidence of this fraud, the ATF's ongoing inaction towards those responsible concurrent with the very real targeting of LeFande, who has committed no crime whatsoever, can only be construed as willful ignorance and bad faith. See *TitleMax of South Carolina, Inc. v. Spicher,* 25-2027 at 32 (4th Cir. Aug. 5, 2026) (citing *Perez v. Ledesma*, 401 U.S. 82, 85 (1971)). LeFande has been specifically targeted, and even the most pedestrian of transactions with the agency as duly authorized by CPI's Board of Directors, a change of address request, have been refused. Pl.'s Ex. UU.[8] This malicious behavior warrants the court's immediate intervention to prevent irreparable harm to LeFande.

> Once licenses are issued, as in petitioner's case, their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment.

*Bell v. Burson*, 402 U.S. 535, 539 (1971) (citing *Sniadach v. Family Finance Corp.*, 395 U.S. 337 (1969); *Goldberg v. Kelly*, 397 U.S. 254 (1970)). See also *Parker v. District of Columbia*, 478 F.3d 370, 376 (D.C. Cir. 2007) *aff'd, District of Columbia v. Heller*, 554 U.S. 570 (2008) ("[w]e have

---

8 On February 8, 2026, the same signator to the June 8, 2026 ATF letter was separately served a copy of the Board of Directors resolution of January 24, 2026, Pl.'s Ex. SS, authorizing LeFande's acts on its behalf and disavowing any authority of Jona Blocker. Pl.'s Ex. VV.

consistently treated a license or permit denial pursuant to a state or federal administrative scheme as an Article III injury") and the cases cited therein.

LeFande has two distinct rights protected by the Fourteenth Amendment with regard to his corporation's FFL.[9]

> (1) the liberty "'to engage in any of the common occupations of life,'" [*Board of Regents v. Roth*, 408 U.S. 564, 572 (1972)] (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)); and (2) the right to due process "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him," *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971); *see also Paul v. Davis*, 424 U.S. 693, 701 (1976) (explaining that an individual's liberty interest in his reputation is only sufficient "to invoke the procedural protection of the Due Process Clause" if combined with "some more tangible interest[] such as employment").

*Sciolino v. City of Newport News*, 480 F.3d 642, 646 (4th Cir. 2007) [parallel citations omitted].

> An official determination that a person has committed a crime may cause two different kinds of injury. It may result in tangible harms such as imprisonment, loss of the right to vote or to bear arms, and the risk of greater punishment if another crime is committed. It may also severely injure the person's reputation and good name.

*Spencer v. Kemna*, 523 U.S. 1, 22 (1998) [STEVENS, J., *dissenting*].

---

9 LeFande acknowledges that no 42 U.S.C. § 1983 claim has been made against the ATF upon this fact pattern, *yet*. While this analysis may rest more appropriately in the public policy section of this argument, it nevertheless amply demonstrates that the ATF's refusal to correct LeFande's records is rife with irreparable harm.

Such allegation, together with the express allegation of LeFande's violation of the law, "'might seriously damage his standing and associations in his community' or had 'imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities'". *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 307 (4th Cir. 2006) (quoting *Roth*, 408 U.S. at 573 & n. 12).

**4. The Balance of Equities and Public Policy dictate an injunction.**

As with any instance of enjoining facially illegal conduct, the analysis of the balance of equities and public policy merge necessarily herein. LeFande asks that a *status quo* of some twenty years, his position as the "responsible person" for CPI's Federal Firearms License be restored herein, the property of the company be returned to its premises location of the last fourteen years and these licenses issued by the federal government properly reflect the information which appeared upon them from the time of their first issuance until when Blocker defrauded the ATF otherwise.

> [T]he court ordinarily is not required at an early stage to draw the fine line between a mathematical probability and a substantial possibility of success. This endeavor may, of course, be necessary in some circumstances when the balance of equities may come to require a more careful evaluation of the merits. But where the balance of other factors tips decidedly toward movant a preliminary injunction may issue if movant has raised questions so serious and difficult as to call for more deliberate investigation.

*Dataphase Sys., Inc., v. C L Sys., Inc.,* 640 F.2d 109, 113 (8th Cir. 1981) (en banc).

Indeed, LeFande's initial efforts in September 2023 to inhibit Blocker's dangerous behavior precipitated any change in the *status quo* regarding LeFande's relationship to CPI. Only due to the ATF's unlawful refusal to produce LeFande's own records on demand until 2025 did he learn of the extent of Blocker's frauds ***and that they were initiated just weeks after LeFande obtained a domestic protection order against her***. There has been no moment within the passage of this fact pattern LeFande has not strived to preserve the *status quo*, culminating in this appeal today.

The public interest in enjoining these manifold criminal acts and ATF's obstinance in the face of them is self-evident without further analysis. "The serving of public rather than private ends is the normal course of the criminal law because criminal acts, 'besides the injury [they do] to individuals… strike at the very being of society; which cannot possibly subsist, where actions of this sort are suffered to escape with impunity.'" *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 765 (2005) (quoting 4 William Blackstone, COMMENTARIES *5).

> [LeFande] alleges an ongoing scheme in which multiple government entities are being repeatedly defrauded regarding a highly regulated corporation and the alleged ability to "contact a firearms dealer anywhere in the United States and purchase firearms over the counter or by mail without a background check or completion of ATF's Firearm's Transaction Record Form 4473." Dkt. 1 ¶ 43.

*LeFande*, 1:25-cv-00054, ECF # 23 at 20.

The gravity of this situation, while apparently ignored by the ATF, amounts to an immediate threat to the public in general and to LeFande in a very specific manner. This demands the court's immediate intervention, and a complete evidentiary inquiry and investigation.

## VII. Conclusion

LeFande has demonstrated that the records about him maintained by ATF are inexcusably incorrect and amount to an immediate threat of irreparable harm to his person and his lawful enterprise. For these reasons, and for other such reasons as this Court finds to be good and sufficient cause, the District Court's March 20, 2026 dismissal should be VACATED and the matter REMANDED for discovery and trial. ATF should be ENJOINED from maintaining these inaccurate records and LeFande's position as the "Responsible Person" for CPI's FFL be fully restored forthwith.

Respectfully submitted, this third day of September 2026.

Matthew August LeFande
Box 22
Midland VA 22728
(540) 346-3760
email: matthew.lefande@cpi-va.us
Plaintiff/Appellant

**REQUEST FOR ORAL ARGUMENT**

The Appellant shall make himself available for in-person oral argument to expand upon any point of fact or law presented in this appeal.

**Certificate of Compliance under FRAP 32(a).**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because the brief contains 8,615 words, excluding those parts exempt from counting by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that copies of the proceeding Opening Brief and Exhibits UU-VV were served upon the United States Attorney via electronic filing this third day of September 2026.

Matthew August LeFande